*556 GRAVES, Presiding Justice,
for the Court:
¶ 1. Jessica Rice appeals the judgment of the Madison County Chancery Court changing the surname of her minor child to that of the father pursuant to a paternity action. As this is a case of first impression, this Court must interpret Mississippi Code Section 93-9-9(1) of the Mississippi Uniform Law on Paternity. For the reasons stated herein, we affirm the judgment of the chancellor.
FACTS AND PROCEDURAL HISTORY
¶ 2. Jessica Rice and Scott Merkich had been dating on and off for about two years when they discovered that Rice was approximately eight weeks pregnant in June 2007. Rice and Merkich were living together at the time of the pregnancy. Rice and Merkich had planned to get married, but they ultimately ended the relationship on August 25, 2007, and Rice moved in with her parents. Rice admitted that she had dated other men while she and Mer-kich were broken up, and Merkich questioned the child’s paternity. However, the parties remained in contact after the break-up. Prior to ending the relationship, Merkich accompanied Rice on two doctor’s visits. After the break-up, Mer-kich planned to accompany Rice to at least one other doctor’s visit, but Rice changed the date of the appointment without informing him of the new time. Merkich also contributed to the payment of two medical bills related to the pregnancy.
¶ 3. The baby was due January 22, 2008, but was born on January 3, 2008. Rice did not contact Merkich when she went into labor and, thus, he was not present when she gave birth to the baby girl, which Rice named Presley Annsleigh Rice. Rice did not inform Merkich of Presley’s birth until January 6, 2008, the day after she was discharged from the hospital.
¶ 4. On January 16, 2008, Merkich filed a Petition for Determination of Paternity, seeking paternity testing. The parties agreed to DNA testing, and the results established a 99.98 percent probability that Merkich is Presley’s father. Thereafter, Merkich filed in that same action on March 7, 2008, a Complaint for Determination of Child Custody and Visitation. Merkich asked for joint legal and physical custody of Presley, asked that her surname be changed to Merkich, and stated that he was willing to pay his statutorily-required child-support obligation. Rice filed a Response to Complaint for Determination of Child Custody and Visitation and Respondent’s Counterclaim for Back Child Support and Other Relief on April 1, 2008. Rice denied that Merkich should be awarded joint care, custody and control of the minor child. Rice also denied that Presley’s surname should be changed to Mer-kich. Rice admitted that Merkich should pay child support and counterclaimed for back child support. Merkich filed an answer on April 2, 2008.
¶ 5. After a hearing for temporary relief, the chancellor entered a Temporary Order on July 10, 2008, finding that Rice and Merkich would share joint legal custody of Presley and that Rice would maintain primary physical custody subject to Merkich’s reasonable visitation rights. The chancellor also ordered temporary child support and set the matter for trial on January 13, 2009. On the date of trial, Rice and Mer-kich filed a joint stipulation that they agreed on all issues except those identified, which included Presley’s surname. The trial proceeded on those issues, including Presley’s surname. After hearing evidence and testimony, the chancellor found that Presley’s surname should be Merkich. Subsequently, Rice filed this appeal.
*557 ANALYSIS
¶ 6. Rice raises the following issues:
I. Whether the trial court erred in denying Defendant’s Motion for Directed Verdict after Plaintiff failed to prove by clear and convincing evidence that it is in the minor child’s best interests for the trial court to change her surname.[1]
II. Whether the trial court erred in granting Plaintiff’s petition to change the surname of the child pursuant to Miss.Code Ann. § 93-9-9(1) absent proof by clear and convincing evidence that it is in the minor child’s best interests to do so.
¶ 7. This Court “will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard.” Powers v. Tiebauer, 939 So.2d 749, 752 (Miss.2005). “When reviewing questions of law, this Court employs a de novo standard of review and will only reverse for an erroneous interpretation or application of law.” Id.
¶ 8. Mississippi Code Section 93-9-9 of the Mississippi Uniform Law on Paternity states, in relevant part: “In the event of court-determined paternity, the surname of the child shall be that of the father, unless the judgment specifies otherwise.” Miss.Code Ann. § 93-9-9(1) (Rev. 2004) (emphasis added). Although the statute does not delineate those circumstances where the “judgment specifies otherwise,” it is reasonable to conclude that those circumstances should be examined in light of the best interest of the child, if, and only if, this is a contested issue. In other words, “in the event of court-determined paternity,” where a party to the action contends that the surname should not be “that of the father,” then, and in that event, that party must prove by a preponderance of the evidence that it is in the child’s best interest that the surname not be “that of the father.” We note that the parties assert a clear and convincing evidence burden of proof and that in Pendleton v. Leverock, 23 So.3d 424, 431 (Miss.2009), this Court referenced a clear and convincing standard with regard to a custody case involving a natural parent and a third party. However, we find that a preponderance of the evidence is the appropriate burden of proof in the instant case. Moreover, child-custody and adoption cases are categorically different from cases involving changing the surname of a child to the surname of the natural father pursuant to statute.
¶ 9. In the instant case, the statute’s plain language clearly indicates that Presley’s surname shall be Merkich unless Rice proves by a preponderance of the evidence that it is in the child’s best interest that her surname not be Merkich. Such an interpretation is consistent with and supported by other relevant statutory provisions and Department of Health rules. For example, Mississippi Code Section 93-9-9(3) states:
Upon application of both parents to the State Board of Health and receipt *558 by the State Board of Health of a sworn acknowledgement of paternity executed by both parents subsequent to the birth of a child born out of wedlock, the birth certifícate of the child shall be amended to show such paternity if paternity is not shown on the birth certificate. Upon request of the parents for the legitimization of a child under this section, the surname of the child shall be changed on the certificate to that of the father.
Miss.Code Ann. § 93-9-9(3) (Rev. 2004) (emphasis added).
¶ 10. Mississippi Code Section 41-57-23(2) of the Vital Statistics Chapter provides that:
If a child is born to a mother who was not married at the time of conception or birth, or at any time between conception and birth, and the natural father acknowledges paternity, the name of the father shall be added to the birth certificate if a notarized affidavit by both parents acknowledging paternity is received on the form prescribed or as provided in Section 93-9-9. The surname of the child shall be that of the father except that an affidavit filed at birth by both listed mother and father may alter this rule. In the event the mother was married at the time of conception or birth, or at any time between conception and birth, or if a father is already listed on the birth certificate, action must be taken under Section 41-57-23(1) to add or change the name of the father.
Miss.Code Ann. § 41-57-23(2) (Rev. 2009) (emphasis added). Rice testified that she had failed to disclose to Merkich that Presley had been born until after she had been released from the hospital. If Rice had informed Merkich earlier, and he had acknowledged paternity by completing the proper forms at the hospital, then, pursuant to this section, Presley’s surname would have been Merkich unless both Rice and Merkich had signed an affidavit stating otherwise.
¶ 11. Such a finding is also consistent with the Rules Governing the Registration and Certification of Vital Events by the Mississippi State Department of Health. Rule 103.04 states:
This section details the conditions under which the father’s name may be entered on the certificate, the specification of the child’s name under each condition, and conditions under which the surname of the child may be different from either the father’s surname or mother’s surname if no father is listed. Traditionally, a child assumes the legal surname of his or her father as listed on the birth certificate, or of the mother if no father is listed. When the surname given a child is not traditional, a signed statement, witnessed by a hospital representative, signed by both parents or the mother if no father is listed, and filed with the birth certificate shall be required, but the certificate shall not be considered nor marked as having been amended.
Miss. Dep’t of Health R. 103.04, available at Miss. State Dep’t of Health Website, http://unm.msdh.state.ms.us/ (last accessed May 3, 2010).
¶ 12. Further, Rule 18 states:
The surname of the child shall be determined in the following manner:
1. Mother married. If the mother was married at the time of conception or birth, or at any time between conception and birth, the surname of the child shall be that of the husband except that a statement, signed by both the listed mother and husband, and witnessed by a health facility representative, filed at the same time as the birth certificate is filed may alter this rule.
*559 2. Mother not married; no acknowledged father. If the mother was not married at the time of conception or birth, or at any time between conception and birth, the surname of the child shall be that of the legal surname of the mother, except that a statement, signed by the listed mother and witnessed by a health facility representative, filed at the same time the birth certificate is filed may alter this rule.
3. Mother not married; acknowledged father. If the mother was not married at the time of conception or birth, or at any time between conception and birth, and the natural father acknowledges such paternity, the surname of the child shall be that of the father except that a statement signed by both the listed mother and the acknowledged father, witnessed by a health facility representative, and filed at the same time the birth certificate is filed may alter this rule. The Acknowledgement of Paternity affidavit may be rescinded under Rule 19 — Rescission of acknowl-edgement of paternity, upon rescission the father’s information will be removed from the birth certificate and the surname of the child will be changed to the legal surname of the mother at the time of birth.
4. Court-determined paternity. In the event of court-determined paternity, the surname of the child shall be that of the father, unless the judgment specifies otherwise.
Miss. Dep’t of Health R. 18, available at Miss. State Dep’t of Health Website, http:// immv.msdh.state.ms.us/ (last accessed May 3, 2010).
¶ 13. The only evidence offered by Rice that Presley should not have the surname Merkich is possible embarrassment and confusion for Rice and Presley to have different names. Specifically, at the hearing to determine Presley’s surname, Rice testified:
A. Yeah. I’m her mother, and I think it would be embarrassing if I dropped her off at school, picked her up at school, went to church — they don’t understand, you know, maybe last name, but I know that does happen in the world today. But I want her to have the last name of Rice because that’s — she’s my little girl, and I wanted her this whole time. She—
Q. So I understand — I’m sorry. I didn’t meant to cut you off.
A. And you asked me if there’s any disadvantages. I mean, the disadvantage is she has a name. Her last name is Rice, and I’m sure she would be confused down the road why her birth certificate says something different. I don’t know how else to answer that question.
¶ 14. Later, Rice testified as follows:
Q. You think it would be unusual, or do you think that Presley would be at some disadvantage if she had a different last name than that of her mother?
A. A disadvantage? Of course not. I would love her just the same no matter what her name is. A disadvantage? No. But I see the advantages of her having my last name. I have a healthy child, and that’s what’s important.
¶ 15. Rice also testified that she would have taken Merkich as a last name if she and Merkich had married. Further, Rice testified that Merkich is a good father, who is very involved in Presley’s life and spends as much time with her as possible.
¶ 16. We find that Rice failed to prove by a preponderance of the evidence that it is in the child’s best interest that her surname not be Merkich. In so finding, we reject Rice’s argument that a best-interest-of-the-child analysis must be em *560 ployed in each paternal surname change pursuant to Marshall v. Marshall, 230 Miss. 719, 93 So.2d 822, 825 (1957). An on-the-record, best-interest determination before changing a child’s surname to that of the court-determined father in paternity cases is not required pursuant to Section 93-9-9(1) and would serve only to impede the process of “legitimization” of children born out of wedlock. Further, Marshall did not fall within the purview of Section 93-9-9(1), which, again, is part of the Mississippi Uniform Law on Paternity. Paternity was not an issue in Marshall. Instead, the issue in Marshall pertained to a name-change action subsequent to a divorce in which the mother sought to change the surname of an eleven-year-old child from that of his father to that of the step-father. Notwithstanding that Marshall is factually distinguishable, this Court’s analysis in Marshall is not applicable. Again, Marshall involved a petitioner attempting to change the child’s surname to a different surname subsequent to a divorce and a remarriage.
¶ 17. Further, the cases from Arkansas and Tennessee cited by the dissent are distinguishable, as those states do not have similarly worded statutes. The applicable statute in Huffman v. Fisher, 343 Ark. 737, 38 S.W.3d 327, 329 (2001), states: “In any case in which paternity of a child is determined by a court of competent jurisdiction, the name of the father and surname of the child shall be entered on the certificate of birth in accordance with the finding and order of the court.” Ark.Code Ann. § 20-18-401(e)(3) (Rev. 2005). The Tennessee statutes discussed in Barabas v. Rogers, 868 S.W.2d 283, (Tenn.Ct.App.1993), contain a variety of options for surnames and time periods for so choosing, none of which is similar to Section 93-9-9. See Tenn.Code Ann. § 68-3-305 (Rev. 2006).
¶ 18. In the instant case, there is absolutely nothing in the record to support any conclusion that the chancellor interpreted the statute to mean that she had no choice other than to change the child’s surname to Merkich. In fact, the chancellor had a hearing on that issue because the mother objected to the child’s surname being changed. After “having heard and considered the joint stipulation made by the parties, testimony and evidence presented by both parties and the law presented by respective counsel and the argument thereof,” the chancellor found that the surname of the child shall be Merkich. (Judgment, Feb. 4, 2009). Further, the chancellor specifically stated on the record that she found no reason to deny the request to change the name to Merkich pursuant to statute. Clearly, the chancellor recognized that there may be cases where the general rule requiring the surname to be that of the father does not apply. However, the chancellor also correctly found that this was not one of those cases. The chancellor also correctly found that Rice had not proven by a preponderance of the evidence that it was in the child’s best interest that her name not be Merkich.
¶ 19. For the reasons stated herein, we find that the chancellor’s decision is supported by substantial evidence, was not manifestly wrong, clearly erroneous or an abuse of discretion. Therefore, we affirm the judgment of the Madison County Chancery Court.
¶ 20. AFFIRMED.
WALLER, C.J., CARLSON, P.J., RANDOLPH, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. LAMAR, J„ DISSENTS WITH SEPARATE OPINION JOINED BY DICKINSON, J.

. A motion for directed verdict under Rule 50 of the Mississippi Rules of Civil Procedure applies only in cases tried by a jury. Miss. R. Civ. P. 50 cmt. However, while Rice should have filed a motion to dismiss pursuant to Rule 41(b) of the Mississippi Rules of Civil Procedure, she is not precluded from challenging the weight or sufficiency of the evidence supporting the judgment against her. Clements v. Young, 481 So.2d 263, 268-69 (Miss.1985); Miss. R. Civ. P. 41(b).